IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CYNTHIA LEE BRUCE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:09-CV-0200 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff CYNTHIA LEE BRUCE brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for supplemental security benefits (SSI). Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not entitled to benefits be AFFIRMED.

I.
STATEMENT OF THE CASE

On November 3, 2006, plaintiff filed an application for supplemental security income payments, alleging she became disabled beginning January 1, 2004, Tr. 7, 78-87, due to arthritis, asthma, allergies, and pain in her hands and right shoulder. Tr. 93, 111. On July 30, 2008, a hearing was held before an administrative law judge (ALJ). Tr. 15-33. Plaintiff, who was 50-years-

old at the time of the hearing, appeared with counsel. Plaintiff testified she completed the 12th grade, took one special education class and, although she did not do very well in school, is able to read and write.[1] Tr. 18. She also testified she last worked in 2004 delivering newspapers. Tr. 19. Plaintiff alleged disability due to arthritis in the middle finger, hip and tailbone, knees that grind and are "about to give out," a "frozen shoulder," and asthma that gives her trouble if she does "anything too strenuous." Tr. 20-21. Plaintiff testified Tylenol alleviates the symptoms "for a short while." Tr. 20.

      John Cash, a vocational expert (VE) retained by plaintiff, testified at the hearing. Tr. 21-28. Prior to the hearing, Mr. Cash prepared a Vocational Assessment Report to determine plaintiff's potential for successfully engaging in competitive community based employment. Tr. 218. In his report, which was before the ALJ at the hearing, the VE opined that, based on plaintiff's school records and the testing he conducted, plaintiff's primary vocational impediment was a cognitive impairment. Tr. 218. The VE found plaintiff was unable to complete an employment application, had well below average "verbal skills through auditory vocabulary comprehension," and had well below average short term visual memory and spatial localization. He further found plaintiff had a Verbal IQ of 74 and Performance and Fullscale IQs below 70. Tr. 219-20. In his report, the VE determined plaintiff's reported IQ from her school system and certain deficiencies identified through the VE's testing of plaintiff's adult daily living (ADL) skills[2] confirmed she would have significant vocational impediments to employment. Tr. 223. The VE identified deficiencies with

---

[1] In her Disability Report, plaintiff indicated she did not take special education classes. Tr. 97. The record, however, contains a certification that plaintiff met the requirements for graduation in the Vocational Adjustment Class Program as stated in the Administrative Guide and Handbook for Special Education. Tr. 126.

[2] Testing revealed deficiencies in identifying and using tools, identifying basic health and safety procedures, an inability to tell time or use a calendar, and an inability to measure temperature, volume and distance. The VE found plaintiff "demonstrated minimal ability to attend to tasks and appeared to be easily distracted by tangential thoughts," but remained on all tasks until completed. The VE also noted plaintiff needed "concrete initial instructions and frequent feedback and redirection to stay on task," but was able to follow very concrete and repeated directions, and was responsive to constructive criticism. Tr. 222.

time mastery, basic health and safety practices and plaintiff's inability to independently transport as impediments to her being able to work as a home care giver. The VE noted plaintiff demonstrated significant need for direct supervision to complete basic adult tasks which were consistent with the need for job coaching and supported employment services. The VE concluded plaintiff would "require ongoing and substantive vocational rehabilitation support services in order to gain and maintain even non-competitive community based employment." The VE predicted plaintiff would not be able to maintain any employment without substantive employment support provided indefinitely. The VE further opined plaintiff did not recognize that her true disabilities were cognitive as opposed to physical/exertional. Tr. 223.

The VE testified he administered several tests to plaintiff, all of which are used in making a vocational determination about a person's ability to get back into the workforce or function within the workforce. Tr. 25. The VE noted plaintiff scored below 70 on an IQ examination, and other testing reflected cognitive and daily living skills equivalent to those of a 14-year-old. Tr. 26-27.[3] The VE testified he would not recommend retraining as an option for plaintiff. Tr. 28.

After the VE's testimony, the ALJ noted the absence of any medical evidence in the record concerning any medically determinable mental impairment. The ALJ further noted plaintiff's claim had been processed, at the state and federal level, purely on physical or exertional impairments. Tr. 29. The ALJ noted that, based on the VE's report and testimony, that plaintiff may possibly have a mental impairment raising issues under sections 12.05 (mental retardation), 12.07 (somatoform disorders) or 12.08 (personality disorders) of the SSA listings for mental disorders. In response, plaintiff's counsel inquired as to whether the ALJ would seek a consultative examination with a

---

[3] The WAIS III testing indicated IQ scores of Full Scale: 64, Verbal: 67, and Performance: 65. (Tr. 227-228). The scaled scores broken down by age indicated plaintiff was functioning anywhere from a 3 year level for arithmetic to 7 years for comprehension. (Tr. 228).

clinical psychologist or whether the ALJ would prefer counsel seek such an examination. Tr. 30. Due to time constraints, the ALJ determined plaintiff should arrange for a consultative examination and the record would be held open for thirty (30) days for supplementation. Tr. 30-23. The ALJ indicated a supplemental hearing could be held if necessary, but did not believe one would be necessary because he had "a pretty good idea of what's coming down the road" and just needed "to get it in writing." Tr. 33. The ALJ indicated the consultative examiner should consider sections 12.05, 12.07 and 12.08 as the possible areas of mental impairments.

On February 2, 2009, the Disability Determination Services authorized Addison E. Gradel, Ed.D., to conduct a psychological exam with IQ and a mental status exam on plaintiff. Tr. 225. On February 20, 2009, Dr. Gradel performed the consultative psychological examination. Tr. 226-29. At the exam, plaintiff reported she lives with a disabled man whom she "helps." Tr. 226. She reported she requires no unusual assistance in bathing, dressing, preparing basic food, using a microwave, doing laundry, making her bed, or caring for her five cats and a dog. Plaintiff also reported she is able to shop, make grocery purchases, handle her own finances, attend church, do crafts and obtain transportation through friends. Plaintiff reported she completed twelve years of education, and placement in special education classes, but no grade retention. Tr. 227.

Dr. Gradel noted that during the examination, plaintiff initiated conversation and made good eye contact, was oriented and had normal speech, and was able to repeat numbers and common objects. Dr. Gradel found plaintiff's thought processes were goal directed with no loosened association, and her thought content coherent and logical. Dr. Gradel noted plaintiff "was able to sustain sedentary individual attention to task for 2 hours when she completed the examination without taking a break. Tr. 227.

Dr. Gradel administered procedures for measuring intelligence and achievement to evaluate

plaintiff's IQ and mental status. The results of such testing indicated plaintiff had a verbal IQ of 67, a performance IQ of 65, and a full scale IQ of 64, which Dr. Gradel described as "moderately below the normal range." Based on these "moderate below normal" results, Dr. Gradel determined plaintiff had a learning disorder identified as audio verbal deductive reasoning disorder. Tr. 227-28. Dr. Gradel explained plaintiff's level of performance placed her functioning within the "mild below normal borderline intellectual range" when compared with others her age. Dr. Gradel further explained plaintiff's level of performance in educational achievement was not deficient based upon her intellectual capacity, noting plaintiff sight reads, spells, and performs paper pencil arithmetic within expected grade levels. Dr. Gradel assessed plaintiff's performance on various intelligence subtests from mildly below the normal range to moderately below the normal range. Tr. 228.

Dr. Gradel's diagnosis was that plaintiff had a learning disorder (audio verbal deductive reasoning disorder) and borderline intellectual functioning. Dr. Gradel noted plaintiff's psychosocial and environmental stressors could pose an occupational problem and assessed plaintiff's Global Assessment of Functionality (GAF) rating at 60 indicating moderate symptoms or moderate difficulty in social or occupational functioning. Dr. Gradel opined plaintiff would be able to manage any benefit payments and understood the meaning of filing for benefits. Tr. 229.

On April 29, 2009, the ALJ issued a decision finding plaintiff not disabled. Tr. 7-14. It is noted that notwithstanding the fact that Dr. Gradel's findings were significantly different from Mr. Cash's findings, the ALJ issued his decision without convening a supplemental hearing. In his decision denying benefits, the ALJ determined plaintiff had not engaged in substantial gainful activity since November 3, 2006, the date she applied for SSI benefits. Tr. 9. The ALJ also found plaintiff had a medically-determinable impairment of borderline intellectual functioning and that such impairment was severe within the meaning of the SSR regulations because it significantly

limits plaintiff's ability to perform basic work activities.  The ALJ found plaintiff has non-severe medically determinable impairments of asthma and allergies that are well-controlled by medications.  Tr. 10.  The ALJ also found plaintiff's complaints of arthralgias and myalgias were not medically-determinable impairments.  The ALJ determined plaintiff had no impairment, or combination of impairments, that met or medically equaled the requirements of any listed impairment for presumptive disability.  Tr. 10.  The ALJ specifically considered the requirements of Listing 12.05, based on mental retardation.  Tr. 10-12.  The ALJ determined plaintiff did not meet the requirements of 12.05C because, although she has a valid IQ score within the 60-70 range, plaintiff does not have any other severe impairments.  Tr. 11.  The ALJ did not address Listings 12.07 or 12.08.

       The ALJ determined plaintiff retained the residual functional capacity (RFC) to perform a "full range of work at all exertional levels" but with the following nonexertional limitations: "limited to simple, unskilled work activity."  Tr. 12.  The ALJ found plaintiff's "medically determinable impairments [borderline intellectual functioning, asthma and allergies] could reasonably be expected to cause the alleged symptoms, however, [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment."  Tr. 13.  The ALJ noted plaintiff's physical impairments are not severe, and that although her borderline intellectual functioning causes intellectual deficits, plaintiff is independent in her activities of daily living, has worked, and "reportedly cares for a disabled man for some sort of remuneration."  The ALJ found plaintiff "is not significantly limited by borderline intellectual functioning and has apparently been independent her entire adult life."  The ALJ noted "many people with mental retardation (which [plaintiff] does not have) are able to work as well as people with fourth-grade level educational achievement."  Tr.

13.

The ALJ noted the record did not contain any treating source opinions regarding plaintiff's mental impairment, but did contain two examining opinions.  The ALJ determined the opinion of Mr. Cash, the VE hired by plaintiff, "cannot be said to be impartial in this matter as he has been retained by [plaintiff's] advocate."  However, the ALJ noted the VE's opinion would still be given some consideration.  The ALJ found the VE's conclusions about plaintiff's activities of daily living were inconsistent with plaintiff's own reported activities and, thus, such conclusions were given little weight.  The ALJ also noted the VE determined plaintiff could not perform home health care work even though that is the type of work plaintiff had been performing.  The ALJ found the VE's opinion inconsistent with the record as a whole, and further found Dr. Gradel's opinion was more consistent with plaintiff's reported activities and the record as a whole.  He thus, afforded Dr. Gradel's opinion significant weight.  Tr. 13.

The ALJ determined plaintiff had no past relevant work (PRW), and at 49-years-old when her application was filed, was a younger individual on the date the application was filed.  The ALJ noted plaintiff has at least a high school education and is able to communicate in English, and has no transferability of job skills as she has no PRW.  Noting plaintiff's "ability to perform  work at all exertional levels" is compromised by her "nonexertional limitations" (limitations to simple, unskilled work activity), the ALJ determined the Medical-Vocational Guidelines of 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), could only be used as a framework for making his decision regarding plaintiff's disability rather than directing a conclusion concerning disability.  Finding plaintiff's nonexertional limitations (limitations to simple, unskilled work activity) "have little or no effect on the occupational base of unskilled work at all exertional levels," the ALJ determined a finding of "not disabled" was appropriate under the framework of section 204.00 of

the Grids (addressing maximum sustained work capability limited to heavy work as a result of severe medically determinable impairment(s)).  The ALJ concluded, based on plaintiff's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy plaintiff can perform.  The ALJ concluded plaintiff had not been under a disability since the date her application was filed.  Tr. 14.

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied plaintiff's request for review on June 24, 2009, allowing the ALJ's decision to stand as the Commissioner's final administrative decision in this matter.  Tr. 1-3.

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made.  *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989).  To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history.  *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)).  If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding.  *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980).  Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices"

or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

### III.
### ISSUES

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the regional and national economies, and whether the proper legal standards were applied in making this determination. Plaintiff presents the following issues in this appeal:

1. The ALJ committed reversible legal error in determining plaintiff did not meet or equal Listing 12.05C for mental retardation; and

2. The ALJ committed reversible legal error in utilizing the Medical-Vocational Grid Rules as a framework to determine plaintiff was not entitled to benefits.

### IV.
### MERITS

#### A.
#### 12.05 Listing

A claimant must meet all of the requirements of a Listing in order to be presumptively disabled. *See Sullivan v. Zebley*, 493 U.S. 521, 540 (1990). Listing 12.05C states:

> 12.05 *Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially

>manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
>The required level of severity for this disorder is met when the requirements in ... C ... are satisfied.
>
>C.  A valid verbal, performance, or full scale IQ of 60 through 70 <u>and</u> a physical <u>or other</u> mental impairment imposing an <u>additional</u> and <u>significant</u> work-related limitation of function.

(emphasis added).  Listing 12.05C, establishing the third of four ways to establish the level of severity necessary to meet a mental retardation listing, requires a claimant show:  (1) evidence of significantly subaverage intellectual functioning; (2) with deficits in adaptive functioning; (3) with an onset before the age of 22; (4) a valid verbal, performance, or full scale I.Q. of 60 through 70; and (5) a physical or <u>other</u> mental impairment; (6) imposing an <u>additional</u> and <u>significant</u> work-related limitation of function.  *See* 20 C.F.R. Pt. 404, Subpart P, App. 1§ 12.05C; *cf. Randall v. Astrue*, 570 F.3d 651, 656 (5th Cir. 2009).  Neither party appears to contend plaintiff did not meet the criteria for the general provision of 12.05 or the IQ requirements of 12.05C.

The issue is whether plaintiff met the last element necessary for this disorder, *i.e.,* whether plaintiff demonstrated she has "a physical or <u>other</u> mental impairment imposing an <u>additional</u> and <u>significant</u> work-related limitation of function." (emphasis added).  Although plaintiff notes a physical consultative examination wherein it was noted she had "positive symptoms of arthritis, asthma, and allergies," and that knee pain was demonstrated by "moderate crepitation" audible on examination, plaintiff does not appear to argue such positive symptoms constituted a *physical* "impairment imposing an <u>additional</u> and <u>significant</u> work-related limitation of function" as required by Listing 12.05C (emphasis added).  Tr. 20-21, 163, 215.  Further, even if plaintiff were to make such argument, it would fail.  There is a sufficient evidentiary basis for the ALJ's finding that plaintiff's *physical* impairments did not impose a significant work-related limitation of function.

The ALJ's finding that plaintiff's alleged physical impairments were either non-severe[4] or not medically-determinable is a conclusion supported by the record.[5]  The Court must also consider whether plaintiff has demonstrated the ALJ erred by not finding the medical evidence of record indicated plaintiff suffered from a *mental* impairment, *other than* her IQ of 60 - 70, that imposed an additional and significant work-related limitation of function.

Plaintiff argues that after examination, the VE reported she could not properly fill out a job application (Tr. 219), had difficulty with visual-motor coordination, and was distracted easily during testing.  (Tr. 220).  Plaintiff also notes Dr. Gradel's finding that she functions anywhere from a 3-year-level for arithmetic to a 7-year-level for comprehension.  Plaintiff appears to argue such findings demonstrated "other" mental impairments imposing additional, significant work-related limitations and, thus, the ALJ's finding that plaintiff does not meet 12.05C is erroneous and is not supported by substantial evidence in the record.

While plaintiff's analysis and the findings of the VE, if adopted by the ALJ, could, and probably would, very well support a finding of a listed impairment, plaintiff has not shown the ALJ's determination that plaintiff did not meet or equal Listing 12.05C is erroneous or is not supported by some evidence.  Specifically, Dr. Gradel's findings support the ALJ's determination that plaintiff did not have a mental impairment *other than* her IQ of 60 - 70.  Although the VE retained by plaintiff (Mr. Cash) found deficiencies which would support disability under Listing 12.05, such is rebutted by the findings of the neuropsychologist, Dr. Gradel.  According to Dr.

---

[4] When medical and other evidence establish only a slight abnormality or a combination of slight abnormalities, that would have no more than a minimal effect on an individual's ability to work.  *See Stone v. Heckler*, 752 F.2d 1099, 1101, 1106 (5th Cir. 1985).

[5] Plaintiff does not appear to challenge the ALJ's determination that plaintiff's alleged physical impairments of asthma and allergies are not severe, and alleged arthralgias and myalgias were not medically-determinable impairments.

Gradel, plaintiff suffered no mental impairments independent and apart from an IQ of 60 - 70. Dr. Gradel considered plaintiff's deficiencies and limitations and diagnosed plaintiff with a learning disorder and borderline intellectual functioning. Dr. Gradel made no finding that plaintiff had other mental defects which operated as significant work-related limitations. Plaintiff has not identified <u>additional</u> and <u>significant</u> work-related limitations of function plaintiff experiences as a result of any "other" mental impairment. Plaintiff reported she resides in a house where she "helps a disabled man," requires no unusual assistance in her activities of daily living, is able to prepare food, do laundry, shop, handle her own finances, attend church, do crafts, and care for numerous pets. Plaintiff has not demonstrated how her ability to perform work-related functions are additionally and significantly limited by any "other" mental impairment. Consequently, as the record stands, the ALJ's determination that plaintiff has significant subaverage general intellectual functioning, with deficits in adaptive functioning and an IQ of 60 - 70, but <u>did</u> <u>not</u> have any *other* mental impairment that imposes an *additional* and *significant* work-related limitation of function, is supported by substantial evidence. *Cf. Selders v. Sullivan*, 914 F.2d 614,619 (5th Cir. 1990); *Randall v. Astrue*, 570 F.3d at 657-60. Plaintiff's first ground should be denied.

B.
Failure to Consult Vocational Resource

The VE retained by plaintiff presented limited testimony at the administrative hearing concerning plaintiff's potential for successfully engaging in competitive community based employment. The VE testified he would not recommend retraining as an option for plaintiff. The VE's report, which was before the ALJ, reflected his opinion that plaintiff would "require ongoing and substantive vocational rehabilitation support services in order to gain and maintain even non-competitive community based employment" and that she would be unable to maintain any

employment without such indefinite support.

The ALJ considered the VE's report but gave little weight to the VE's conclusions concerning plaintiff's activities of daily living, finding they were inconsistent with plaintiff's own reported activities. The ALJ also discredited the VE's conclusion that plaintiff could not perform home health care which the ALJ found plaintiff had been doing. The ALJ thus concluded, at Step Four, that plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: [plaintiff] is limited to simple, unskilled work activity."

At Step Five, the ALJ restated his RFC finding that plaintiff has the ability to perform work at all exertional levels" but that such ability was "compromised by nonexertional limitations," *i.e.*, limitations to simple, unskilled work activity. The ALJ determined these nonexertional limitations (limitations to simple, unskilled work activity) had "little or no effect on the occupational base of unskilled work at all exertional levels." The ALJ then determined a finding of "not disabled" was appropriate under the framework of section 204.00 of the Grids.[6] The ALJ consequently found there were jobs in significant numbers in the national economy plaintiff can perform and found plaintiff not disabled.

Plaintiff presents as his second ground that the ALJ erred "in using the Medical-Vocational Grid Rules as a framework in light of vocational testimony that [plaintiff] would not be able to work without ongoing and substantive vocational support." Plaintiff then states the issues under this ground are (1) the ALJ's ability to make his determination that plaintiff's non-exertional

---

[6] Section 204.00 states: The residual functional capacity to perform heavy work … includes the functional capacity for work at the lesser functional levels as well and represents substantial work capability for jobs in the national economy at all skill and physical demand levels. Individuals who retain the functional capacity to perform heavy work . . . ordinarily will not have a severe impairment or will be able to do their past work – either of which would have already provided a basis for a decision of "not disabled". Environmental restrictions ordinarily would not significantly affect the range of work existing in the national economy for individuals with the physical capability for heavy work . . . . Thus an impairment which does not preclude heavy work . . . would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse.

limitation, *i.e.*, limitation to simple, unskilled work activity, has little or no effect on the occupational base of unskilled work at all exertional levels, in light of the evidence presented by plaintiff, and (2) the ALJ's ability to use the Medical-Vocational Guidelines as a "framework" for making the determination that plaintiff is "not disabled."

Plaintiff cites provisions of SSR 85-15 which address a claimant's capability to do other work and the use of the Medical-Vocational Rules as a framework for evaluating solely nonexertional impairments. Noting the ruling states mental impairments are generally considered to be nonexertional, plaintiff details the issues and the order in which they should be considered in determining whether a claimant with only nonexertional impairments can perform other work. The first issue concerns how much the claimant's occupational base, under all exertional levels, is reduced by the effects of the claimant's nonexertional impairments. The remaining issues concern whether a vocational adjustment can be made by the claimant and, where the nonexertional impairment is a mental impairment, whether the claimant can still perform unskilled work. Plaintiff also notes other considerations the ruling indicates should be made in determining a claimant's capability to do other work when that claimant has solely nonexertional impairments.

Plaintiff ultimately argues that, here, the ALJ erred in determining plaintiff's nonexertional limitation to "simple" work activity had little or no effect on the occupational base of unskilled work at all exertional levels because the ALJ did not consult a vocational source. Plaintiff argues that in light of SSR 85-15, the ALJ could not make such a finding without the assistance of a VE and that any such finding is arbitrary, capricious and erroneous. Plaintiff also appears to argue the ALJ's determination that a limitation to "simple" work would have little or no effect on the occupational base of unskilled work is not supported by substantial evidence as the only VE testimony in the record "supports the opposite conclusion." Plaintiff notes her VE testified he

would not recommend retraining as an option for plaintiff and opined in his report that plaintiff's well below average intellectual skills indicated by his testing would cause significant vocational impediments to employment and plaintiff would not be able to maintain employment without substantive employment support provided indefinitely. Plaintiff contends the ALJ erred in discounting the VE opinion by simply finding, without evidence of bias, that the VE "cannot be said to be impartial" because he was retained by plaintiff.

While VE testimony would have been of assistance in clarifying this issue, SSR 85-15 does not *require* the ALJ consult a VE to determine if, and if so to what extent, non-exertional limitations reduce an occupational base across all exertional levels. SSR 85-15 states only that "[i]n many cases, a decision maker will need to consult a vocational resource" in determining the range of reduction on the occupational base caused by the effects of the nonexertional impairments. *See* SSR 85-15 at 3. The decision of whether to a call a vocational expert remains within the discretion of the ALJ. *See Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983). Plaintiff has not shown the ALJ abused that discretion to the degree of committing reversible error by failing to consult a vocational resource before determining plaintiff's nonexertional limitation to "simple" work activity had little or no effect on the occupational base of unskilled work at all exertional levels.

Nor has plaintiff shown that the ALJ's determination that a nonexertional limitation to "simple" work would have little or no effect on the occupational base of unskilled work was not supported by substantial evidence, or that the ALJ committed legal error in making this finding. While the undersigned does not necessarily agree the VE (Mr. Cash) is not credible simply because he was retained by plaintiff, the undersigned notes the ALJ also stated the VE's opinion would be given some consideration. The ALJ appeared to credit the VE's findings that plaintiff is deficient in tool usage, basic health and safety procedures, telling time and measuring things, but noted these

deficiencies did not cause plaintiff significant difficulty in performing her activities of daily living. The ALJ also explained the IQ test administered by the VE was not considered valid because the VE was not a psychologist, but also noted the IQ test results "were not terribly far apart" from the results of the test administered by the neuropsychologist. The ALJ further found the VE's conclusions about plaintiff's activities of daily living were inconsistent with her own reported activities and those findings were granted little weight. The ALJ noted the VE's opinion that plaintiff would not be able to perform home health care work even though that was the type of work plaintiff had been performing. The ALJ found, without elaboration, that the VE's opinion was inconsistent with the record as a whole and chose not afford the opinion controlling weight. Since the ALJ outlined the reasons he found warranted discrediting the VE's opinions, he did not commit legal error.

      The only severe impairment found by the ALJ, plaintiff's borderline intellectual functioning, imposes no exertional limitation. In his decision, the ALJ acknowledged plaintiff's mental impairment causes mild restrictions in activities of daily living, no difficulties in social functioning, and mild difficulties with regard to concentration, persistence or pace. Incorporating the degree of limitation found in this mental function analysis into his RFC assessment, the ALJ determined plaintiff had the RFC to perform a full range of work at all exertional levels but with the nonexertional limitation to "simple" work. Plaintiff has not shown the nonexertional limitation to "simple" work would significantly reduce the range of work as the basic mental demands of competitive, remunerative, unskilled work include the ability (on a sustained basis) to understand, carry out, and remember simple instructions. SSR 85-15 at *4. Other than the testimony from the VE which the ALJ found not credible, plaintiff has not demonstrated the ALJ's determination that a limitation to "simple" work would have little or no effect on the occupational base of unskilled

work is not supported by substantial evidence.

To the extent, if any, plaintiff challenges the ALJ's reliance on the Grids as a framework, such claim is without merit. Again, the only severe impairment found by the ALJ, plaintiff's borderline intellectual functioning, imposes no exertional limitation. Borderline intelligence is also not a nonexertional limitation and does not erode the relevant job base. *Arce v. Barnhart*, 185 Fed. Appx. 437 at *2, 2006 WL 1765899 (5th Cir. 2006) (citing *Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990)). Therefore, the only nonexertional limitation found by the ALJ was the limitation to simple work. The mere presence of a non-exertional limitation does not preclude reliance on the Grids. *See Fraga v Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). When a claimant's nonexertional limitations do not significantly affect a claimant's RFC, an ALJ may exclusively rely on the Grids in determining there is work available the claimant can perform. *See Selders*, 914 F.2d at 618. Consequently, any claim of error for relying on the Grids as a framework is without merit.

Moreover, Grid Rule 204.00 corresponds to the heavy work category, a category necessarily included in the ALJ's finding that plaintiff has the RFC for all exertional levels. This rule sets forth additional reasons why VE testimony was unnecessary in this case. First, "the residual functional capacity to perform heavy work or very heavy work includes the functional capability for work at the lesser functional levels as well, and represents substantial work capability for jobs in the national economy at all skill and physical demand levels." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 204.00. Even at the sedentary level, "approximately 200 separate unskilled sedentary occupations can be identified, *each representing numerous jobs in the national economy*." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(a). Plaintiff's restriction to simple, unskilled work at all exertional levels, utilizing the grid, signifies she is capable of

performing a significant number of jobs in the national economy for purposes of a step-five determination. Secondly, Grid Rule 204.00 states "an impairment which does not preclude heavy work (or very heavy work) would not ordinarily be the primary reason for unemployment, and generally is sufficient for a finding of not disabled, even though age, education, and skill level of prior work experience may be considered adverse." 20 C.F.R. Part 404, Subpart P, Appendix 2, § 204.00. Since the ALJ determined plaintiff is capable of performing a full range of all exertional work and further determined the non-exertional limitation did not affect such RFC, he obviated the need to elicit VE testimony. Although additional VE testimony as to the effect of plaintiff's non-exertional limitations of "simple work" might have been better, the absence of such VE testimony is not fatal to the administrative finding of not disabled.

      Plaintiff's position, in essence, is that reliance on the Grid was not proper because the VE testimony established more significant non-exertional limitations than were found by the ALJ. This case does indeed present significant conflicting opinions from plaintiff's VE (Tr. 218-24), and from Dr. Gradel, the consulting neuro-psychological examiner. (Tr. 225-29). A second administrative hearing and/or an independent VE may very well have clarified the issues in this case. In light of the ALJ's comments at the first hearing, plaintiff may very well have expected there would be a second hearing. A second hearing was not held and the conflicts between Mr. Cash and Dr. Gradel were resolved by the ALJ. The resolution of such conflict was within the ALJ's discretion, and the failure to hold another hearing was not reversible error. By resolving those conflicts against plaintiff's VE, the ALJ was able to use the Grid as a framework and no reversible error was committed. Based on the record as it exists, plaintiff's second ground should be DENIED.

V.
CONCLUSION

It is the recommendation of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to SSI benefits be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 7th day of September, 2011.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).